NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

23-P-484                                        Appeals Court

COMMONWEALTH  vs.  ROBERT A. SABIN.

No. 23-P-484.

Plymouth.     January 11, 2024. - June 20, 2024.

Present:  Rubin, Ditkoff, & Grant, JJ.

Parental Kidnapping.  Practice, Criminal, Required finding.
    Statute, Construction.  Time.  Evidence, Court record,
    Relevancy and materiality.  Judgment.  Words, "Protracted
    period."

    Complaint received and sworn to in the Plymouth Division of
the District Court Department on February 11, 2021.

    The case was tried before James M. Sullivan, J.

    Christopher DeMayo for the defendant.
    Johanna Black, Assistant District Attorney, for the
Commonwealth.

    DITKOFF, J.  The defendant, Robert A. Sabin, appeals from

his conviction, after a District Court jury trial, of parental

kidnapping, G. L. c. 265, § 26A.  The defendant kept his five

year old child after his weekend of parenting time, intending to

take the child on vacation to an amusement park in New Jersey

for six days.  Concluding that the jury could find that six days
was a protracted period of time under the circumstances here,
and that the admission of an uncertified Probate and Family
Court judgment, if error, did not prejudice the defendant, we
affirm.[1]

1.  Background.  The mother and the defendant shared legal
custody of their five year old son pursuant to a judgment from a
Probate and Family Court judge, following a trial in that court.
The judgment gave the mother sole physical custody of the child,
except that the defendant was allowed parenting time every other
weekend from Friday at 5 P.M. until Sundays at 6 P.M., as well
as two hours each Wednesday evening.  The mother would
occasionally pick the child up at 8 P.M. on Sunday when the
defendant had not exercised his two-hour parenting time on the
preceding Wednesday.

The defendant wanted to take the child on a six-day
vacation to an amusement park in New Jersey.  Thrice, the
defendant texted the mother about his planned vacation.  On
November 26, 2019, he wrote, "July 26 2020 to aug 1st 2020 ill
be taking [the child] on vacation."  On January 3, 2020, he
wrote, "Think i told you but i got the approval.  7/26-8/1 2020.

---

[1] As we discuss infra, the parental kidnapping statute,
G. L. c. 265, § 26A, punishes not only a person who unlawfully
"holds" a child for a protracted period of time, but also one
who "intends to hold" a child for a protracted period of time.

Taking [the child] on vacation."  And on June 30, 2020, he wrote, "Just 3rd heads up 7-26 to 8-1 taking [the child] on vaca," to which the mother replied in part, "You don't have a week vacation to take him in our court order and I'm not agreeing to that.  I don't know why you think you can just decide something against our order and do what you . . . ."[2]

Around 2 P.M. on Sunday, July 26, 2020, the mother texted the defendant about picking the child up that evening, and the defendant told her that "he was not going to be giving [the child] back to [her], that he planned on taking [the child] out of state to go on vacation."  She told the defendant that she "was not in agreeance to that."

When she went to pick up the child that evening, neither the child nor the defendant was there.  She tried to call the defendant multiple times, but he did not answer.  She contacted the police.

Initially, the police were unable to reach the defendant, so an officer left a voice mail message.  Later that night, the defendant called the officer back.  The officer explained that he had called to "check the wellbeing of the child" because there appeared to be "a probate order in effect" saying that the child "was supposed to be in [the mother's] custody at that

---

[2] The remainder of the mother's text message is not visible in the screenshot of the message that was admitted at trial.

point."  The defendant told the officer that "he knew he was in violation of the order, but that it was something he would deal with -- the contempt of which he would deal with at another time."  At this point, the defendant was in Connecticut, about three hours from New Jersey.  The officer told the defendant that the defendant "was likely committing a criminal offense," and "suggest[ed] that he return with the child."  The defendant told the officer that he would call back again.

The defendant called again and told the officer that he would be returning with the child that evening.  The defendant returned with the child at approximately 1:05 A.M.

2.  Sufficiency of the evidence.  a.  Standard of review.
Where, as here, a sufficiency of the evidence challenge is based on statutory interpretation, we begin our review with interpreting the statute at issue.  "Our primary duty in interpreting a statute is 'to effectuate the intent of the Legislature in enacting it.'"  Commonwealth v. Sousa, 88 Mass. App. Ct. 47, 49 (2015), quoting Campatelli v. Chief Justice of the Trial Court, 468 Mass. 455, 464 (2014).  "The language of the statute is the starting point for all questions of statutory interpretation."  Bank of N.Y. Mellon v. Morin, 96 Mass. App. Ct. 503, 507 (2019), quoting Retirement Bd. of Stoneham v. Contributory Retirement Appeal Bd., 476 Mass. 130, 135 (2016).  "If the language is 'clear and unambiguous, it is to be given

its "ordinary meaning."'" Commonwealth v. Mansur, 484 Mass. 172, 175 (2020), quoting Commonwealth v. Soto, 476 Mass. 436, 438 (2017). "We review questions of statutory interpretation de novo." Wallace W. v. Commonwealth, 482 Mass. 789, 793 (2019), quoting Millis Pub. Sch. v. M.P., 478 Mass. 767, 775 (2018).

After we discern the meaning of the underlying statute, "[w]e consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Lagotic, 102 Mass. App. Ct. 405, 407 (2023), quoting Commonwealth v. Tsonis, 96 Mass. App. Ct. 214, 216 (2019). "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Howe, 103 Mass. App. Ct. 354, 357 (2023), quoting Commonwealth v. Wheeler, 102 Mass. App. Ct. 411, 413 (2023).

b. "Protracted period" of time. For ordinary kidnapping under G. L. c. 265, § 26, no particular period of confinement is necessary. Rather, "[a]ny restraint of a person's liberty is a confinement or an imprisonment." Commonwealth v. Dykens, 438 Mass. 827, 841 (2003). For example, "the act of forcing the victim into [an] alley, though admittedly brief, was nonetheless sufficient" to support a kidnapping conviction. Commonwealth v.

Wilcox, 72 Mass. App. Ct. 344, 350 (2008). Accord Commonwealth v. Lent, 46 Mass. App. Ct. 705, 706, 710 (1999) (defendant controlled victim's movements for one block).

The parental kidnapping statute is different. That statute applies to "a relative of a child less than eighteen years old, [who,] without lawful authority, holds or intends to hold such a child permanently or for a protracted period, or takes or entices such a child from his lawful custodian." G. L. c. 265, § 26A.[3] Thus, absent an intent to hold the child permanently or for a protracted period of time, a brief restraint is insufficient. The Commonwealth must prove either that the defendant held the victim for a protracted period of time or that the defendant intended to hold the victim for a protracted period of time (or permanently).

Where, as here, the Commonwealth alleged that the defendant intended to hold the victim for a protracted period of time, the actual amount of time the victim was held is material only to the extent that it illuminates the defendant's intent. In light of the way the Commonwealth prosecuted this case, we do not reach the question whether the length of time for which the defendant actually held the child -- approximately seven hours,

---

[3] In addition to protecting children, the statute also protects an incompetent victim or "other person entrusted by authority of law to the custody of another person or institution." G. L. c. 265, § 26A.

from 6 P.M. until 1:05 A.M. -- would constitute a "protracted period" within the meaning of § 26A. If the confinement is interrupted by police involvement before a protracted period of time has passed, which we may assume it was here, it is the defendant's intent that controls.

Given this posture, the defendant challenges only whether the six days he admittedly intended to hold the child could constitute a "protracted period" of time. We conclude that it may.

Whether a period of time is a "'protracted period' is highly context-dependent." State v. Cline, 180 Wash. App. 644, 653 (2014). Accord Commonwealth v. Oberle, 476 Mass. 539, 540, 547, 549 (2017) (in domestic violence kidnapping case, "rational juror could have concluded that . . . confinement was protracted" such that it went beyond "confinement or restraint . . . inherent in the underlying assaults and batteries" where "it was dark when the entire incident began" and "light by the time the victim escaped"). Our colleagues in other States with parental kidnapping statutes similar to ours have articulated a "protracted period" as "a lengthy or unusually long time under the circumstances," Cline, supra; State v. Luckie, 120 N.M. 274, 279 (Ct. App. 1995), quoting People v. Obertance, 105 Misc. 2d 558, 559 (N.Y. Crim. Ct. 1980); or a "drawn out or prolonged period of time," State v. Romero, 145 N.M. 594, 600 (Ct. App.

2008).  See Regina C. v. Michael C., 440 P.3d 199, 207 (Alaska 2019) (distinguishing in dicta "short period of time" from "protracted period" of time).  Whether a period of time is protracted may depend on, among other considerations, the age of the child, see Cline, supra at 646 (weekend may be protracted period for "a 14-month-old child"), any conditions on parenting time, see People v. Sharp, 104 A.D.3d 1325, 1326 (N.Y. 2013) (indictment upheld where parent who was permitted "only limited supervised visitation" held child overnight), or the circumstances under which the parent takes the child, see People v. Garcia, 46 Misc. 3d 620, 627 (N.Y. Crim. Ct. 2014) ("The bare allegation that [the noncustodial parent] picked the child up from school does not sufficiently allege the intent to hold her either 'permanently or for a protracted period'").  See also Schofield v. State, 132 Nev. 303, 308-309 (2016) (interpreting "intent to keep" element of first-degree kidnapping to mean "keep . . . permanently or for a protracted period of time" and discerning that trip to grocery store was insufficient).

Here, the jury could find that the six days that the defendant intended to keep the child was a protracted period of time.  The child was only five years old, and the defendant was supposed to have parenting time for only the weekend.  Under these circumstances, a reasonable jury could find that an extra six days of vacation out of State was a protracted period of

time.  See Sharp, 104 A.D.3d at 1326 (overnight); People v. S.W., 81 Misc. 3d 299, 300-301 (N.Y. County Ct. 2022) (little over one day); Cline, 180 Wash. App. at 646 (weekend).  See also State v. Munoz, 139 N.M. 106, 112-113 (2006) (two weeks); State v. Dirks, 35 Or. App. 33, 37 (1978) (two months).

3.  Authentication of uncertified court judgment. Evidentiary "matters are 'entrusted to the trial judge's broad discretion and are not disturbed absent palpable error.'" Commonwealth v. Childs, 94 Mass. App. Ct. 67, 71 (2018), quoting Commonwealth v. Keown, 478 Mass. 232, 242 (2017), cert. denied, 583 U.S. 1139 (2018).  "The 'judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made "a clear error of judgment in weighing" the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives.'"  Commonwealth v. Pimentel, 99 Mass. App. Ct. 597, 600 (2021), quoting Commonwealth v. Butler, 87 Mass. App. Ct. 183, 187 (2015). Because the defendant objected to the admission of the uncertified Probate and Family Court judgment, we review for "prejudicial error."  Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).  "An error is not prejudicial if it did not influence the jury, or had but very slight effect."  Commonwealth v. White, 103 Mass. App. Ct. 655, 659 (2024), quoting Commonwealth v. Souza, 492 Mass. 615, 627 (2023).

Here, we need not decide whether it was proper to admit the Probate and Family Court judgment -- which was uncertified but the mother testified was authentic -- because its admission did not prejudice the defendant.  The mother testified that the operative Probate and Family Court judgment allowed the defendant parenting time every other weekend from Friday at 5 P.M. until Sunday at 6 P.M.  Far from contesting this, the defendant confirmed it, telling the police officer that "he knew he was in violation of the order."  Accordingly, the judgment itself was cumulative evidence of its uncontested existence and relevant terms, and its admission was nonprejudicial.  See Commonwealth v. Caruso, 476 Mass. 275, 291 (2017) (no prejudice where erroneously admitted screenshots were cumulative of other properly admitted evidence).

Judgment affirmed.